# EXHIBIT 1

## TO GENERAL MOTORS' NOTICE OF REMOVAL



null / ALL
**Transmittal Number: 19721946**
**Date Processed: 04/29/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Rosemarie Williams<br>General Motors LLC<br>Mail Code 482-C22-SOP 300 Renaissance CTR<br>300 Renaissance Center<br>Detroit, MI 48265-0001 |

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors LLC |
| **Title of Action:** | Mehlman, Gregory, L.  vs. General Motors LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Alameda County Superior Court, CA |
| **Case/Reference No:** | RG19013705 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/26/2019 |
| **Answer or Appearance Due:** | 05/14/2019 |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Pomerantz LLP (Los Angeles, CA)<br>310-432-8492 |
| **Client Requested Information:** | Year:<br>Make:<br>Model:<br>VIN: |

| | |
|---|---|
| **Notes:** | Pomerantz LLP<br>1100 Glendon Ave 15th Floor<br>Los Angeles, CA 90024 |
| | CSC Location document was served: Corporation Service Company which will do business in California as Csc-Lawyers Incorporating Service 2710 Gateway Oaks Drive Suite 150N Sacramento, CA 95833 |
| | The document matches the original document as received. |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Lurie, Jordan L
1100 Glendon Ave.
15th Floor
Los Angeles, CA  90024

## Superior Court of California, County of Alameda

| | |
|---|---|
| Mehlman<br><br>**Plaintiff/Petitioner(s)**<br>VS.<br><br>General Motors LLC<br>**Defendant/Respondent(s)**<br>(Abbreviated Title) | No. <u>RG19013705</u><br><br>**NOTICE OF CASE MANAGEMENT<br>CONFERENCE AND ORDER**<br>Unlimited Jurisdiction |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
Notice is given that a Case Management Conference has been scheduled as follows:

| | | |
|---|---|---|
| Date: **08/20/2019**<br>Time: **01:30 PM** | Department: **512**<br>Location: **Hayward Hall of Justice**<br>     **2nd Floor**<br>     **24405 Amador Street, Hayward  CA 94544**<br><br>     Internet: **www.alameda.courts.ca.gov** | Judge: **Karin S Schwartz**<br>Clerk: **Shanika Monroe**<br>Clerk telephone: **(510) 690-2721**<br>E-mail:<br>**Dept.512@alameda.courts.ca.gov**<br>Fax: **(510) 267-1529** |

### ORDERS

1.  **Plaintiff** must:

    a.  **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)); and

    b.  **Give notice** of this conference to all other parties and file proof of service.

2.  **Defendant must** respond as stated on the summons.

3.  **All parties who have appeared before the date of the conference** must:

    a.  **Meet and confer,** in person or by telephone as required by Cal. Rules of Court, rule 3.724;

    b.  **File and serve** a completed *Case Management Statement* on Form CM-110 at least **15** days before the Case Management Conference (Cal. Rules of Court, rule 3.725); and

    c.  **Post jury fees** as required by Code of Civil Procedure section 631.

4.  If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

5.  You are further ordered to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed. You may be able to appear at Case Management Conferences by telephone. Contact CourtCall, an independent vendor, at least three business days before the scheduled conference. Call 1-888-882-6878, or fax a service request to (888) 882-2946. The vendor charges for this service.

6.  You may file *Case Management Conference Statements* by E-Delivery. Submit them directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to *www.alameda.courts.ca.gov/ff*.

7.  The judge may place a *Tentative Case Management Order* in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the website of each assigned department for procedures regarding tentative case management orders at *www.alameda.courts.ca.gov/dc*.

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/08/2019.

By _____
Deputy Clerk

Lurie, Jordan L
1100 Glendon Ave.
15th Floor
Los Angeles, CA   90024

General Motors LLC

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Mehlman | No. <u>RG19013705</u> |
| Plaintiff/Petitioner(s) | |
| VS. | |
| General Motors LLC | NOTICE OF HEARING |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 05/14/2019    TIME:  03:00 PM    DEPARTMENT: 23
LOCATION:  Administration Building, Fourth Floor
                   1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at **http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept.23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  04/17/2019          Chad Finke  Executive Officer / Clerk of the Superior Court

By _____
                                                            Deputy Clerk

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/17/2019.

By _____
                                                            Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

General Motors LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Gregory L. Mehlman

| |
|---|
| FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>APR 04 2019<br><br>CLERK OF THE SUPERIOR COURT<br>By____Esther Coleman____<br>Deput |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court<br>1225 Fallon St.<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del caso):*<br>**RG19013705** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jordan L. Lurie, Pomerantz LLP, 1100 Glendon Avenue, 15th Flr., Los Angeles, CA 90024 (310) 432-8492

| | | | | |
|---|---|---|---|---|
| DATE: April 4, 2019<br>*(Fecha)* | Chad Finke | Clerk, by   *Esther Coleman*<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

**SUMMONS**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Jordan L. Lurie (SBN 130013); Jennifer Pafiti (SBN 282790);<br>Ari Y. Basser (SBN 272618); Roxanna Talaie (SBN 320553)<br>POMERANTZ LLP, 1100 Glendon Avenue, 15th Floor<br>Los Angeles, CA 90024<br>TELEPHONE NO.: (310) 432-8492    FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff Gregory L. Mehlman | **FOR COURT USE ONLY**<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>APR 04 2019<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Esther Coleman _____ Deputy<br><br>RG19013705 |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda<br>STREET ADDRESS: 1225 Fallon St.<br>MAILING ADDRESS: 1225 Fallon St.<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: Rene C. Davidson Alameda County Courthouse | |

| CASE NAME:<br>Gregory L. Mehlman v. General Motors LLC, et al. | |
|---|---|
| **CIVIL CASE COVER SHEET** | **CASE NUMBER:**<br>RG19013705 |

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse<br>condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

4. Number of causes of action *(specify):* 1

5. This case ☐ is   ☑ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 4, 2014

Jordan L. Lurie
_____        ▶ _____
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| Gregory L. Mehlman v. General Motors LLC, et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[x] Oakland, Rene C. Davidson Alameda County Courthouse (446)
[ ] Hayward Hall of Justice (447)
[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | | Alameda County Case Type (check only one) |
|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 | Auto tort (G) |
| | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] 75 | Asbestos (D) |
| | Product liability (24) | [ ] 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] 80 | Civil rights (G) |
| | Defamation (13) | [ ] 84 | Defamation (G) |
| | Fraud (16) | [ ] 24 | Fraud (G) |
| | Intellectual property (19) | [ ] 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] 85 | Other employment (G) |
| | | [ ] 53 | Labor comm award confirmation |
| | | [ ] 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] 81 | Collections (G) |
| | Insurance coverage (18) | [ ] 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] 94 | Unlawful Detainer - commercial    **Is the deft. in possession** |
| | Residential (32) | [ ] 47 | Unlawful Detainer - residential    **of the property?** |
| | Drugs (38) | [ ] 21 | Unlawful detainer - drugs    [ ] Yes   [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] 49 | Writ of mandate |
| | | | Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 | Enforcement of judgment |
| | | [ ] 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 | Change of name |
| | | [ ] 69 | Other petition |

1  **POMERANTZ LLP**
   Jordan L. Lurie, State Bar No. 130013
2  jllurie@pomlaw.com
   Jennifer Pafiti, State Bar No. 282790
3  jpafiti@pomlaw.com
   Ari Y. Basser, State Bar No. 272618
4  abasser@pomlaw.com
   Roxanna Talaie, State Bar No. 320553
5  rtalaie@pomlaw.com
   1100 Glendon Avenue, 15th Floor
6  Los Angeles, CA 90024
   Telephone: (310) 432-8492
7
8
9  **LAW OFFICES OF ZEV B. ZYSMAN**
   A Professional Corporation
10 Zev B. Zysman, State Bar No. 176805
   zev@zysmanlawca.com
11 15760 Ventura Boulevard, 16th Floor
   Encino, CA 91436
12 Telephone: (818) 783-8836

13 *Attorneys for Plaintiff*

14

15           SUPERIOR COURT FOR THE STATE OF CALIFORNIA

16                FOR THE COUNTY OF ALAMEDA

17

18 Gregory L. Mehlman, on behalf of himself     Case No. **RG19013705**
   and the general public,

19              Plaintiff,                       **COMPLAINT FOR PUBLIC
                                                 INJUNCTIVE RELIEF**
20              vs.
                                                 **COMPLAINT FOR VIOLATIONS OF**
21 General Motors LLC, and DOES 1 through        **CALIFORNIA BUSINESS AND**
   10, inclusive,                                **PROFESSIONS CODE**
22                                               **SECTION 17200** *et seq.*
              Defendants.
23

24

25

26

27

28

ENDORSED
FILED
ALAMEDA COUNTY

APR 04 2019

CLERK OF THE SUPERIOR COURT
By Esther Coleman
                          Deputy

---
                        COMPLAINT

1   Plaintiff Gregory L. Mehlman ("Plaintiff") brings this action against Defendant General

2 Motors LLC ("Defendant" or "GM") for public injunctive relief, pursuant to California's Unfair

3 Competition Law (*Cal. Bus. & Prof. Code* section 17200 *et seq.*), upon information and belief,

4 except as to his own actions, the investigation of his counsel, and the facts that are a matter of

5 public record, as follows:

6               **INTRODUCTION**

7   1.  Forget the engine or the shiny rims.  Connected vehicles have become the next

8 big thing for the automotive industry.

9   2.  According to a study by McKinsey & Company, by 2020 automakers will be

10 able to make more money selling vehicle data than by selling the cars themselves, and by 2030,

11 the market for in-vehicle connectivity worldwide is expected to reach $750 *billion*.

12   3.  In their desire to monetize vehicle data, car makers, including Defendant General

13 Motors LLC ("GM"), have turned on a powerful spigot of precious personal information

14 without compensating consumers.  Consumers deserve, and are legally entitled, to participate in

15 the commercialization of their own car data.

16   4.  Further, car makers, including Defendant, have accessed car owners' vehicle

17 information without permission in violation of California's Computer Data Access and Fraud

18 Act, Cal. Pen. Code section 502 ("CDAFA").

19   5.  By this action, Plaintiff seeks, *inter alia*, to compel Defendant to establish a

20 framework for compensating drivers for Defendant's use of their car data and/or to compensate

21 current and future GM car owners for the use of their car data (for example, by offering buyers

22 financial incentives for the collection and use of vehicle data, lower monthly lease payments or

23 discounted pricing or rebates, direct free features or services, or by otherwise subsidizing the

24 cost of the car).

25   6.  Plaintiff, also seeks, *inter alia*, to enjoin Defendant's unauthorized access and

26 use of drivers' vehicle data.

27   7.  Car data is worth money.  Car manufacturers are not entitled to use it for free and

28 without full and adequate disclosures at the point of sale.

**JURISDICTION AND VENUE**

8.     This Court has original jurisdiction over all causes of action asserted herein because Plaintiff's claim arise out of Defendant's conduct within the State of California and Defendant conducts business within the State of California.

9.     Venue is proper in this Court because California Code of Civil Procedure §§395 and 395.5, and case law interpreting those sections, provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county in the State that plaintiff desires.  On information and belief, Defendant General Motors LLC is a foreign business entity, and has failed to designate a principal place of business in California with the office of the Secretary of State as of the date this Complaint was filed.

**PARTIES**

10.     Plaintiff Gregory L. Mehlman ("Plaintiff") is, and at all times relevant hereto has been, a resident and citizen of the state of California.

11.     Plaintiff leased a 2018 Chevrolet Bolt EV from Community Chevrolet Company in Burbank, California, on August 12, 2018.

12.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan.  General Motors LLC is registered to do business in the State of California.  The sole member and owner of General Motors LLC is General Motors Holding LLC.  General Motors Holding LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.  General Motors Holdings LLC's only member is General Motors Company, a Delaware corporation with its principal place of business in the State of Michigan.  General Motors Company has 100% ownership interest in General Motors Holding LLC.  General Motors LLC, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, nationwide and in California.  General Motors LLC's core automobile brands include Chevrolet, Buick, GMC and Cadillac.

13.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.  Plaintiff will amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1 through 10, when they have been ascertained, along with the appropriate charging allegations, as may be necessary.

14.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained.  Each reference in this Complaint to "GM" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

## PUBLIC INJUNCTIVE RELIEF ALLEGATIONS

15.     The UCL provides for public injunctive relief.  *McGill v. City Bank, N.A.*, 2 Cal. 5th 945, 961 (2017) ("public injunctive relief remains a remedy available to private plaintiffs under the UCL" even when there is an arbitration provision and without complying with the procedural requirements of a class action).  Under *McGill*, any consumer who loses money or property as a result of an unfair business practice may seek public injunctive relief to prohibit unlawful acts that threaten future injury to the public without the need to certify a class.

16.     As further alleged in detail below, Plaintiff, who has lost money or property as a result of Defendant's unfair business practice, seeks to prohibit ongoing unlawful acts that threaten future injury to the car buying public at large.

17.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

## CAR COMPANIES ARE MONETIZING VEHICLE DATA

18.     Nothing is driving the acquisition of car data faster than, well, driving.  The average modern-day car can contain 100 million lines of code (more than a space shuttle).  Connected vehicles can monitor, collect and transmit information about their external and

COMPLAINT

1  internal environment.  The types of data generated by modern vehicles include sensitive

2  categories like location, biometric and behavioral information.

3       19.    And while acquisition of car data used to require physical access to a vehicle,

4  today's cars have built in connectivity that can transmit information outside of the vehicle

5  seamlessly.

6       20.    Modern cars can track your location due to GPS, and your preference in music,

7  due to your satellite radio.  Your car also can track how fast you have been traveling and

8  whether it is raining where you are, plus a trove of diagnostic vehicle date.

9       21.    Car makers have transformed the automobile from a machine that helps us travel

10 to a sophisticated smartphone on wheels.  Just as computers became increasingly connected to

11 the Internet in the 1990s, cars are now becoming connected to networks and devices.  As one

12 industry observer has noted, "the car is the browser for the physical world."  In 2017, more new

13 cars were added to cellular networks than new cellphones.  The technology research firm,

14 Gartner, estimates that by 2021, 98% of all new cars sold in the United States and Europe will

15 have connectivity.

16      22.    Car makers are embedding intelligence and sensing capabilities into vehicles

17 using technologies such as low-cost sensors, low power high capacity processors, cloud

18 computing and wired and wireless connectivity.  While connecting cars to computers is not new,

19 what has changed is the volume and precision of the data and the information that is being

20 extracted and connected to the Internet. "Before, devices that generate data would stay on the

21 car but there are new ways for that information to be communicated off the vehicle," according

22 to Lauren Smith, policy counsel at the Future of Privacy Forum.

23      23.    In addition to onboard diagnostic services, these applications also facilitate

24 transactions with third parties using the vehicle, such as in-car payment services, vehicle

25 recovery systems, roadside assistance and insurance by using data collected by connected cars

26 to offer cheaper insurance to drivers.  Vehicles also collect sensitive data about the occupants of

27 the vehicles themselves, such as fingerprint or iris patterns for authentication purposes or

28 information about the occupants' real time location.

24. The following charts from a US Government Accountability Office's ("GAO") Report released in July 2017 entitled "Vehicle Data Privacy: Industry and Federal Efforts Under Way" depicts the types of information being collected by car companies from connected cars.



25. User generated data has value to car companies, and businesses are willing to pay for this data so they can figure out how to best target potential customers based on their habits and preferences.

26. A 2018 report by McKinsey & Company entitled "From Buzz to Bucks-Automotive Players on the Highway to Car Monetization" is devoted entirely to monetizing the data generated by cars. The Report points out that sensors in vehicles "allow the capture of information on nearly every way a driver uses a car, how that car function or malfunctions, and everywhere it goes. Organizations that can leverage this connected technology to develop new, in-vehicle experiences for drivers and passengers could create a significant competitive advantage." The Report notes that "all companies might target value creation through car data

monetization" and should "devote adequate management capacity and resources to go from buzz to bucks on the highway to data monetization."

27.    Automakers know that the opportunity for in-vehicle connectivity is huge, and they want in. In late 2016, Intel CEO Brian Krzanich stood on stage at the LA Auto Show and proclaimed: "connected car data is the new oil."

28.    As another industry professional noted, "the thing that car manufacturers realize now is that they're not only hardware companies anymore – they're software companies."

29.    Very soon, if not already, a car's data will become more valuable than the car itself. Indeed, John Ellis, former head of technology at Ford, has written about a "zero dollar car" whereby the information provided by the car is so valuable that it could pay for the car or result in steep discounts to consumers who sign over their vehicle data. Ellis has noted that a car is an incredible tool for data collection. As Ford's Global Technologist, Ellis assisted Ford in recognizing opportunities to monetize this data.

30.    Bundling and selling data from connected cars will be a massive new revenue stream for the OEMs on the order of billions of dollars a year. Unlike selling cars, selling data is a high-margin business between 80-90 percent profit. One industry insider has commented, "A big part of the investment is already done. The data bases are built, SIMS and modems are in the cars; they've crossed the Rubicon." Car companies are prepared to sell driver data to the highest bidder, but most drivers don't know that.

31.    According to Ryan Calo, an associate professor at the University of Washington, by collecting massive amounts of data, car companies could be setting themselves up for the 21st century's "ultimate Faustian bargain." The more data a company collects, the more incentive the company has to monetize that data, according to Calo. Calo added, "Any company that has tons of data about consumers and can control the interaction with them is going to have the capability and incentive to try and use that information to the company's advantage and possibly to the detriment of consumers. It's almost unavoidable."

32.     Similarly, Joseph Jerome, policy counsel for the Center for Democracy & Technology has noted, "Cars are generating so much data, and all of it is incredibly valuable. Carmakers are champing at the bit to find ways to monetize it."

33.     At a "Monetizing Car Data" conference in Munich in January 2019, Tom Raftery, global vice president at SAP stated, "when you collect data, there are other potential uses for that data.... Ford is hoping that data will be a completely new source of revenue." As reported, there was widespread agreement that connected cars and the data they generate will open the door to new services and revenue streams.

34.     Major automakers provide companies, like Otonomo, access to their raw driver data. Otonomo takes that data, analyzes it and then sells that information to third parties, helping automakers commercialize their data. "The automaker gets a revenue share on every piece of data that is consumed," according to Lisa Joy Rosner, Otonomo's Chief Marketing Officer.

35.     "Car makers recognize that they're fighting a war over customer data. Your driving behavior, location, has monetary value, not unlike your search activity," said Roger Lanctot, who works with automakers on data monetization as a consultant at Strategy Analytics.

36.     Similarly, Qualcomm has developed an entire business segment devoted to collecting and analyzing automotive data. According to Qualcomm:

> "[T]he automotive industry is going through an unprecedented transformation. Shared mobility services are changing the definition of car-ownership...At the same time, the car itself is becoming a sensor hub, generating tons of data (e.g. connected car is expected to generate 1.1PB of data per day by 2020). To help the automotive industry in an innovative and cost-effective manner, Qualcomm Technologies has created the Qualcomm drive data platform, which uses cutting edge technology to intelligently collect and analyze data from different vehicle's sensors to facilitate smarter vehicles that can determine their location, monitor and learn driving patterns, perceive their surroundings and share this perception with the rest of the world reliably and accurately."

37.     Other technology companies are also capitalizing on the use of vehicle data. For example, on February 25, 2019 Hewlett Packard Enterprise announced that it was developing a new platform to "help car manufacturers monetize their data" and "extract the full value from

their data" through the use of blockchain technology.  The data monetization platform will enable car manufacturers and other partners to trade data with each other to monetize vehicle data.  HPE was quick to point out that the platform will integrate a "consent management system and provide an easy to use opt-in and opt-out system for drivers."

38.     Moreover, vehicle data monetization is not limited to literally selling data.  Car manufacturers are profiting from car data by building partnerships with third party service suppliers and exchanging data with them.  For example, if a pizzeria that a driver frequents is provided with data about the driver's location just as she's driving by, the driver will get an offer to get a discount on a pizza if she picks it up right then and there, hot and ready to go. This is possible because of the vehicle data the car manufacturer provided, and companies such as pizzerias are willing to pay car manufacturers for that data.

39.     Similarly, it has been reported that GM plans to introduce a feature that can detect when a vehicle's fuel tank is low and then offer a coupon on the car's display for a discount at a nearby gas station.  Gas stations will pay GM a fee for directing customers in their direction.

40.     Indeed, in July 2018, GM created a new position, Chief Data and Analytics Officer, and filled the post with the former chief data officer at Wells Fargo. A GM spokesman noted that GM's new Chief Data and Analytics Officer "basically is looking at data as a business opportunity."

### DEFENDANT'S USE OF VEHICLE DATA WITHOUT COMPENSATION

41.     Based on Defendant's own online Privacy Statement disclosures, Defendant admits to already using drivers' data for its own advantage, and Defendant does not compensate drivers for that use.

42.     Based on Defendant's own privacy disclosures, Defendant is collecting, and continuing to develop the ability to collect, drivers' information regarding, *inter alia*, products or services purchased, obtained or considered, or other purchasing histories or tendencies; biometric information; internet or other electronic connectivity information, including browsing

history and search history; geolocation data; audio, electronic, visual, thermal, olfactory and similar information; and vehicle health.

43.     GM vehicles collect, generate, record or store information in electronic form. GM retrieves that information from the vehicles or from smart devices linked to the vehicles, typically wirelessly.

44.     GM's Privacy Statement available on GM's website covers "all GM controlled subsidiaries and affiliates" and applies to all GM vehicles.  Similarly, GM's online On-Star Privacy Statement states that GM "provides this Privacy Statement to let you know how we collect, use and share your information when you use GM vehicles, products, services, websites, infotainment systems, social media sites and mobile applications for connected vehicles."

45.     GM's Privacy Statement admits that GM collects, maintains, uses, records, and stores information "about you and your vehicle, such as name, address, email address, phone number, vehicle identification number (VIN) and vehicle performance data through your use of our products or services, and through GM affiliates, dealers, GM licensees for consumer merchandise, GM partners and others who provide information to us."  The types of information collected by GM includes: "information about your vehicle (such as license plate number, vehicle identification number (VIN), make, model, model year, selling dealer, servicing dealer, date of purchase or lease, the lease/financing term, service history, mileage, oil/battery status, fuel or charging history, electrical system function, gear status, and diagnostic trouble codes)"; "information about your connected devices (such as mobile phone, computer, or tablet) and how you interact with our products, services, apps and websites (such as IP address, browser type, unique device identifier, cookie data, and associated identifying and usage information)"; "marketing profile information (such as when you plan to purchase or lease; the vehicle in which you're interested);" photographs and videos; and "demographic information  (such as gender, date of birth, marital status and household composition."  On information and belief, GM also is collecting geolocation and driver behavior information.

46.     GM admits to using collected information to "develop new products and services, including connected, autonomous and car-sharing products and services;" for

1  "research, evaluation of use;" and for "marketing and analytics purposes."   These terms are not

2  clearly defined and effectively leave it open to self-interpretation by Defendant, raising further

3  questions about the extent to which Defendant will continue to collect sensitive information.

4  This lack of transparency leaves consumers with little knowledge about how Defendant is

5  actually using their data.  Defendant is obscuring the information because it knows that

6  purchasers would not allow such use at all or without adequate compensation if they knew the

7  extent of Defendant's uses of their vehicle data.

8      47.    GM also admits to using and sharing the collected information with, among

9  others, "our services providers who work on our behalf;" "with our business partners for GM

10  marketing activities, business partner marketing activities or both;" and "with third parties for

11  research and development purposes (such as university research institutes for improving

12  highway safety)."

13      48.    Similarly, GM's On-Star Privacy Statement confirms that "when our connected

14  vehicle products and services are active, we may collect information about your vehicle,

15  including diagnostics, use, and vehicle location." GM's online On-Star Privacy Statement also

16  admits that GM collects "information about the use of your vehicle, including operational and

17  safety related information: such as GPS location, speed, air bag deployments, crash avoidance

18  alerts, impact data, safety system status, braking and swerving/cornering events, event data

19  recorder (EDR) data, seat belt settings, vehicle direction (heading), camera image and sensor

20  data, voice command information, stability control or anti-lock events, security/theft alerts,

21  infotainment system usage, and WiFi data usage" and "information about your device and how

22  you interact with our products and services, including apps and websites: such as IP address,

23  browser type, unique device identifier, cookie data, associated identifying and usage

24  information from your mobile phone, laptop, or other device."

25      49.    GM's On-Star Privacy Statement reiterates that GM uses the information to,

26  among other things, "develop new products and services, including autonomous vehicle and car-

27  sharing products and services;" for "research, evaluation of use;" and "to perform marketing,

28  including interest-based marketing and advertising (with necessary consents)."

COMPLAINT

1     50.    GM's On-Star Privacy Statement also admits that GM shares drivers' vehicle

2     information with "business partners and independent third parties" and "service providers."

3     51.    A driver's data is a valuable commodity and worth money. Car companies, like

4     Defendant, are not entitled to use that information for free or to give it away. However,

5     nowhere does Defendant offer to compensate vehicle owners for Defendant's use of drivers'

6     own vehicle data. Defendant is using drivers' vehicle data and illegally profiting and benefiting

7     from it without compensating drivers.

8     52.    Plaintiff has lost, and continues to lose, the value of his vehicle data as a result of

9     Defendant's conduct. Plaintiff's vehicle data is a valuable commodity, and a market exists for

10    Plaintiff's data. Defendant is using and benefiting from Plaintiff's data, and Plaintiff has lost

11    the value of his data as a result.

12    53.    Further, GM's privacy disclosures, which purport to advise prospective owners

13    about GM's vehicle data use and collection, are inadequate and unfair because vehicle owners

14    cannot opt out of vehicle data collection without disabling features on the vehicle or losing

15    connected vehicle functionality. GM's On-Star Privacy Statement states that "some collection

16    and sharing practices are tied to the products and services we offer. To stop the collection or

17    sharing of some information, you may have to decline those products and services or be willing

18    to accept limited functionality."

19    54.    A driver should not have to choose between consenting to data collection and

20    losing connected vehicle functionality. Prospective purchasers or lessees should be able to opt

21    *in* (or at least opt out) of a vehicle manufacturer's data collection and use, except possibly as to

22    information reasonably necessary to operate the vehicle and maintain vehicle safety.

23    55.    GM's On-Star Privacy Statement also contains a section entitled "Your Choices."

24    However, the only "choices" available pertain to choices about telephone, email, text message

25    and other communications, not data use or collection.

26    56.    Moreover, drivers are entitled to control, and have access to, the use of their own

27    vehicle data. However, Defendant's purported disclosures do not provide for drivers to access

28    their own car data at any time in a usable format, delete their data at any time, revise the

1    parameters of their data sharing at any time, and turn off their data at any time (like putting a

2    phone in airplane mode).  GM's On-Star Privacy Statement contains a section entitled "Access

3    and Updates to Your Information."  However, the information appears to refer only to an

4    owner's personal information, not vehicle data: "You can access your online account to view or

5    update your information in that account. You may also contact us, as provided below, to learn

6    about how to access, review, correct, update, or delete the information about you in our

7    records."#

8         57.    Further, Defendant does not provide prospective owners with a written vehicle

9    data and disclosure policy at the time of sale or lease and does not obtain adequate consent or

10   authorization to use or take information or data from owners' car computer systems prior to

11   purchase.  At a minimum, there should be an easy to read facts sheet that provides for, *inter*

12   *alia*, opt-in consent to data collection and use, and affirms that the data belongs to the vehicle

13   owner and that Defendant will be collecting data from the purchasers' vehicle; the specific data

14   and data types and categories that will be collected; the purposes for the data is being collected

15   and data why such data is needed; how  the data will actually be used; where the data will be

16   stored and for how long; that any data collected will not be monetized or utilized without the

17   vehicle owners' express consent, including that Defendant will not sell purchasers' consumer

18   data to third parties; that vehicle owners can access their data at any time in a usable format,

19   delete their data at any time, revise the parameters of their data sharing at any time, and turn off

20   their data at any time and a description of mechanisms by which drivers can control their own

21   data directly (e.g., via privacy control screens, better use of icons to connote data collection,

22   options to clear on board data) and authorize third parties to access it on their behalf to enable

23   innovative services; that the car's data and privacy systems are being evaluated and audited by

24   independent third parties and updated at least annually; and that vehicle owners will be notified

25   in the event of a data breach.

26        58.    Absent any express agreement by vehicle purchasers, Defendant should limit

27   data collection to information reasonably necessary to operate the vehicle and maintain vehicle

28   safety (including enabling real time emergency calls, immediate information that facilitates

1    rescue services and road hazard warnings).  To the extent that Defendant is, or plans to,

2    monetize drivers' data through sale to third parties or otherwise, Defendant must expressly

3    disclose the practice and offer prospective vehicle owners the right to opt out of allowing

4    Defendant to profit from their personal car data information and provide compensation to

5    drivers who are willing to share that information, for example, through lower monthly lease

6    payments, lower purchase prices, free features or services.

7         59.     Pre-purchase disclosures are particularly important in the vehicle context given

8    that vehicle software choices can be constrained after the point of purchase, as confirmed by

9    Defendant's own privacy policy.  Prospective owners or lessees also should not have to seek

10    such information by combing through lengthy privacy policy sections on the Defendants'

11    website.  "Consumers shouldn't have to read every detail of a complicated contract when

12    they're being pressured to complete a sale or to dig through their 500 page owner's manual or

13    search the web for privacy information they don't even know may be there," says David

14    Friedman, director of cars and product policy and analysis at Consumers Union.

15         60.     Further, not only is Defendant deriving benefit and data from the vehicle and the

16    vehicle's registered owner, Defendant also is accessing and using data and information from the

17    vehicle's other occupants and purporting to make the owner responsible for consenting to such

18    use.  Moreover, while Defendant is collecting and using the data without granting the vehicle

19    owner access to his or her own data, Defendant purports to make the vehicle owner responsible

20    for deleting all the information from the vehicle when the vehicle is sold or transferred.

21         61.     Under the section entitled "Your Obligations," GM's On-Star Privacy Statement

22    states "the nature of our products and services means that there may be circumstances where

23    you might let someone else use a product or service that we provide to you (for example, you let

24    someone else drive your OnStar equipped vehicle).  It is important that if you do let someone

25    else use one of our products or services that you inform them of this Privacy Statement and of

26    the privacy choices that you have made. Further, GM's On-Star Privacy Statement states that

27    "if you sell or otherwise transfer your vehicle, it is your responsibility to delete all information

28    (such as contacts, address look-ups, saved map addresses) from the vehicle's system and contact

1    us to transfer or cancel your account.  If you do not delete this information, it may remain on the

2    vehicle's system and may be accessible to future users of the vehicle."

3         62.    Defendant's conduct as alleged herein also violates the CDAFA in that

4    Defendant has, *inter alia*, knowingly and willfully accessed and without permission, or in

5    excess of authorization, used drivers' vehicle data, computer system or computer network and

6    data to devise or execute a scheme or artifice to defraud, deceive or extort or wrongfully control

7    or obtain money, property or data resulting in loss or damage to drivers.  Moreover, even if

8    Defendant's access was authorized, Defendant's use of the data (particularly data not related to

9    the maintenance or safety of the vehicle) is not.

10                    **GM IS VIOLATING ITS OWN PRIVACY PRINCIPLES**

11        63.    In response to privacy concerns raised by Congress and in an attempt to avoid

12   more onerous, official regulation, in 2014, the auto industry, through the Alliance of

13   Automobile Manufacturers, Inc. and the Association of Global Automakers, Inc., developed a

14   set of voluntary privacy principles – the "Consumer Privacy Protection Principles: Privacy

15   Principles for Vehicle Technologies and Services."  The Principles establish a framework for

16   participating automakers to implement when offering innovative vehicle technologies and

17   services.  The members adopting the framework commit to seven Principles: Transparency;

18   Choice; Respect for Context; Data Minimization; De-identification and Retention; Data

19   Security, Integrity and Access; and Accountability.  These guidelines went into effect in 2016.

20   Defendant GM is a signatory or participating member to the Principles.

21        64.    The Principles leave the guidelines for data use, security, accountability and

22   disclosure to the discretion of the manufacturers.

23        65.    By their own terms, the Principles were "not intended to replace inconsistent or

24   conflicting applicable laws and regulations where they exist" and expressly provide that the

25   Principles "should be interpreted as subject to and superseded by applicable laws and

26   regulations."

27

28

66.     In failing to provide a compensation program, in failing to provide the necessary disclosures regarding data collection, and in accessing vehicle data without adequate consent or permission, GM has violated its own Principles.

67.     For example, the Principles require an owner's "affirmative consent" or "a clear action performed in response to a clear, meaningful and prominent notice disclosing the collection, use, and sharing of Covered Information." The notice must be made in a manner that enables owners to make "informed decisions." The content of the notice must provide for "deletion" of Covered Information, how owners may access the information and the types of entities with which the information may be shared. Based on the foregoing allegations and GM's failure to provide clear, adequate and comprehensive notice, GM has violated its own Transparency Principle.

68.     GM also fails to disclose the monetary value of the information being collected which prevents drivers' from making informed decisions about the use of their own vehicle data. Prospective vehicle owners might not be so quick to agree to free and unfettered access to data if they knew the value of the data.

69.     Unfortunately, GM's conduct is consistent with the US Government Accountability Office's ("GAO") Report released in July 2017 entitled "Vehicle Data Privacy: Industry and Federal Efforts Under Way," which found that none of the 13 car makers in the study who collected data from connected vehicles had easy to read privacy notices and that most do not explain data sharing and use policies. According to the Report, "none of the automakers' written notices were in plain language, a lack that could make them difficult for consumers to understand," that "none of the notices was clearly written" and that "most automakers' written privacy notices used vague language." The Report also noted that "most notices did not describe all of the types and purposes of the connected vehicle data that were being collected, but instead used broad language to describe the process." The Report noted that the use of broad language "does not promote transparency." Similarly, with respect to data sharing, the GAO Report noted that "most written notices did not clearly identify data sharing and use practices" and "used vague language."

70.     The GAO Report also noted that "privacy notices do not guarantee privacy protection" and that some consumers do not take time to read notices, decreasing their ability to provide fully informed consent.  Further, the Report quoted four experts who noted that the multiple decisions and large amount of paperwork required for buying a vehicle are factors that make it less likely for a consumer to thoroughly read a privacy notice.

71.     GM also has violated its Choice Principle, which provides that owners must be offered "certain choices regarding the collection, use and sharing" of information.  To the extent that when an owner agrees to use GM's vehicle's technologies, services or platforms, the owner automatically consents to all data collection, consumers should not have to choose between consenting to all data collection and not receiving services that they paid for and are entitled to or consenting to data collection for free without knowing how Defendant considers its value.  Further, such conduct does not lawfully constitute obtaining owners' permission to use or access the data.

72.     Moreover, GM has further violated the provisions for consumer choice in that GM does not provide consumers with the right to choose to prevent collection of consumers' sensitive data in the first place and does not give consumers the choice to remove data that has already been collected.

73.     The Data Minimization Principle adopted by GM provides that car data may be collected for "legitimate business purposes" and may be retained as long as necessary for "legitimate business purposes."  Similarly, GM's Privacy Statement states that "we may keep the information we collect for as long as necessary to provide products or services to you" and "to operate our business."

74.     The Data Security Principle provides that members commit to reasonable measures to protect collected car data.  GM does not sufficiently describe the privacy security policies that come with drivers' cars such that customers can determine whether the data protection and governance practices are adequate to ensure the safety of the data being collected.

75.     The Integrity and Access Principle commits to providing owners with reasonable means to review and correct information collected.  As alleged above, GM does not provide for owners to access their data at any time in a usable format, delete certain data at any time, revise the parameters of their data sharing at any time, and turn off their data at any time (like putting a phone in airplane mode) and a description of mechanisms by which drivers can control their own data directly (e.g., via privacy control screens, better use of icons to connote data collection, options to clear on board data) and/or authorize third parties to access it on their behalf (e.g., to enable innovative services).  The Integrity principle also should entitle prospective purchasers or lessees to know the true value that Defendant places on the car that Defendant is using for free.

76.     GM also has violated the Accountability Principle by failing to provide recourse if the Principles are violated and by failing to properly account for the value of the data that Defendant is using for free.

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

77.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

78.     California Business and Professions Code sections 17200 *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  Defendant has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

79.     The UCL imposes strict liability.  Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – only that such practices occurred.

80.     GM is a "person" as defined by Business & Professions Code § 17201.

81.     As a direct and proximate result of Defendant's acts and practices in violation of the UCL, Plaintiff has suffered injury in fact and lost money or property as set forth above and will continue to do so.

82.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

83.     The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.  Defendant's conduct is unlawful in that it also violates the California Computer Data Access and Fraud Act, Cal. Pen. Code sections 502(c)(1), (2), (3), (6), & (7), which provides for a civil action for violation of its terms, as set forth herein.

84.     Under California Penal Code § 502c, it is prohibited if any person:

(1)   Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2)   Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3)   Knowingly and without permission uses or causes to be used computer services.
*****

(6)   Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7)   Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

85.     The acts and practices of Defendant as described above also constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.  Plaintiff has suffered injury in fact and a loss of money or property as a result of Defendant's unfair business acts and practices as set forth in detail above and will continue to do so.

86. Defendant's conduct does not benefit consumers or competition. Plaintiff and the affected public could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial.

87. The gravity of the consequences of Defendant's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

88. Defendant's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the general public, prays for relief as follows to the extent permitted by law:

1. Injunctive relief;

2. Attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5 and/or CDAFA § 502(e)(2);

3. For such other and further relief as the Court may deem appropriate.

Dated: April 4, 2019

Respectfully submitted,

POMERANTZ LLP
LAW OFFICES OF ZEV B. ZYSMAN, APC

By: _____
Jordan L. Lurie
*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Jennifer Pafiti, State Bar No. 282790
jpafiti@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
Roxanna Talaie, State Bar No. 320553
rtalaie@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation
Zev B. Zysman, State Bar No. 176805
zev@zysmanlawca.com
15760 Ventura Boulevard, 16th Floor
Encino, CA 91436
Telephone: (818) 783-8836

*Attorneys for Plaintiff*

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Gregory L. Mehlman, on behalf of himself and the general public, | Case No. RG19013705 |
| Plaintiff, | Hon. Brad Seligman Department 23 |
| vs. | **PLAINTIFF'S NOTICE OF ASSIGNMENT, HEARING, AND INITIAL CASE MANAGEMENT ORDER** |
| General Motors LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | Date Action Filed: April 4, 2019 Trial Date: Not yet set |

1    **TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on May 15, 2019, this matter was assigned for all

3    purposes to the Honorable Brad Seligman, in Department 23 of the Superior Court of California,

4    County of Alameda.  A true and correct copy of the Court's Notice of Assignment of Judge for

5    All Purposes is attached hereto as "Exhibit 1."  Please also take notice that on May 15, 2019, the

6    Court issued an Initial Case Management Order, a true and correct copy of which is attached

7    hereto as "Exhibit 2."

8        **PLEASE TAKE FURTHER NOTICE** that the Court scheduled an Initial Case

9    Management Conference for June 11, 2019, at 3:00 p.m. in Department 23 of the Superior Court

10   of California, County of Alameda, located at 1221 Oak Street, 4th Floor, Oakland, California

11   94612.  A true and correct copy of the Court's Notice of Hearing is attached hereto as "Exhibit

12   3."

13

14   Dated: May 20, 2019              Respectfully submitted,

15                                  **POMERANTZ LLP**

16                                  **LAW OFFICES OF ZEV B. ZYSMAN, APC**

17                      By: _____

18                               Jordan L. Lurie

19                               Ari Y. Basser
                                 *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

### *Superior Court of California, County of Alameda*



### *Notice of Assignment of Judge for All Purposes*

Case Number: RG19013705
Case Title:     Mehlman VS General Motors LLC
Date of Filing: 04/04/2019


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

|  |  |
|---|---|
| **Judge:** | **Brad Seligman** |
| **Department:** | **23** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| **Phone Number:** | **(510) 267-6939** |
| **Fax Number:** | **0** |
| **Email Address:** | **Dept.23@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."


IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

**General Procedures**

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Brad Seligman
DEPARTMENT 23

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1)  and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's website also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

You may schedule case management hearings, law & motion hearings and other calendar events with Department 23 by EMAIL ONLY. The use of email is not a substitute for filing pleadings or filing other documents. You must provide copies of all email communications to each party (or the party's attorney if the party is represented) at the same time that you send the email to the Court and you must show that you have done so in your email. Courtesy copies of all moving, opposition and reply papers should be delivered directly to Dept. 23 in the Administration Building 1221 Oak St. 4th Floor Oakland, CA 94612.

**Schedule for Department 23**

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held:  Mondays through Thursdays from 9:00 am - 1:30 pm.

- Case Management Conferences are held:  Tuesdays beginning at 3:00 pm.

- Asbestos Cases Fridays 9:15 am

- Law and Motion matters are heard:  Tuesdays beginning at 3:00 pm. Asbestos Cases Fridays 9:30 am; in exceptional circumstances, motions may be set at other times.

- Settlement Conferences are heard:  N/A

- Ex Parte matters are heard:  Tuesdays at 3:00 pm. Asbestos Cases Fridays 9:00 am

- Pro Hac Vice Process:  Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order

shortening time must be submitted.  Applications will not be considered on an exparte basis. CRC 9.40.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:          Dept23@alameda.courts.ca.gov

  Reservations by email only. No discovery motions will be scheduled prior to conference with the court. Email to schedule a conference.

- Ex Parte Matters
  Email:          Dept23@alameda.courts.ca.gov

  Reservations by email only.

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 23
- Phone:  1-866-223-2244

Dated:  05/14/2019

_Lxy – S. Covit_  
Facsimile

Presiding Judge,
Superior Court of California, County of Alameda

---

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as attached hereto and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 05/15/2019

By _____
Deputy Clerk

# EXHIBIT 2

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

**ENDORSED
FILED**
ALAMEDA COUNTY

MAY 1 5 2019

CLERK OF THE SUPERIOR COURT
By _jhalisa Castaneda_
Deputy

| | |
|---|---|
| MEHLMAN,<br><br>                    Plaintiffs | Case No. RG19013705 |
| GENERAL MOTORS LLC<br><br>            Defendants | INITIAL CASE MANAGEMENT ORDER<br><br>ASSIGNED FOR ALL PRE-TRIAL PURPOSES TO: JUDGE BRAD SELIGMAN, DEPARTMENT 23 |
| | |

The following order shall apply to all parties in this action:

1.  CASE MANAGEMENT CONFERENCES

At Case Management Conferences the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750. Counsel thoroughly familiar with the case shall attend the Case Management Conferences. See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature of the case, both factually and legally, as well as the projected management of the case at each stage. This is not a perfunctory exercise. The primary objective of the CCMC is to develop a comprehensive plan for a just, speedy and economical determination of the litigation.

Courtesy copies of statements must be delivered directly to Dept. 23. The filing and delivery date is not later than five court days before the conference.

The Court strongly prefers joint CCMC statements prepared in narrative form, and not using Form CM-110, after counsel have met and conferred as required by CRC 3.724. CCMC statements must address the following issues when applicable:

1

A.  A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B.  The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C.  Deadlines and limits on joinder of parties and amended or additional pleadings;

D.  Class discovery and class certification, if applicable;

E.  A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F.  An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G.  A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1)  unserved parties and the reasons for the failure to serve;

(2)  unserved and/or unfiled cross-complaints;

(3)  related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management

Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

2. NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable.  With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

3. DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court until after an informal discovery conference pursuant to revised Local Rule 3.31 (January 1, 2019) except a party may request a discovery conference in a Case Management Conference Statement. The discovery conference is not a pro forma step before a motion.  Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel. The court will provide proposed dates.  Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

4.   EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice.  Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give

notice that a hearing has been dropped or a settlement reached, to request a discovery conference, emergency scheduling issues (i.e. running late to a hearing), to give notice that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 23, to communicate with the courtroom clerk regarding department 23 procedures, or other matters that the court has expressly authorized in this case.

**5.** Pro Hac Vice Process

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted. Applications will not be considered on an ex parte basis. CRC 9.40.

6. NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will be published in the Court's website in the Register of Action for this case.  The clerk of the court WILL NOT serve each party a copy of future orders.  Instead, unless otherwise ordered, counsel shall obtain copies of all future orders from the Register of Action in this case.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The clerk is directed to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: May 15, 2019

**BRAD SELIGMAN**

BRAD SELIGMAN, JUDGE

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Dated: May 15, 2019

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| Pomerantz, LLP<br>Jordan L. Lurie<br>Jennifer Pafiti<br>Ari Y. Basser<br>Roxanna Talaie<br>1100 Glendon Ave., 15th Floor<br>Los Angeles, CA 90024<br>jllurie@pomlaw.com<br>jpafiti@pomlaw.com<br>abasser@pomlaw.com<br>rtalaie@pomlaw.com<br><br>Law Offices of Zev B. Zysman<br>A Professional Corporation<br>Zev B. Zysman<br>15760 Ventura Boulevard, 16th Floor<br>Encino, CA 91436<br>zev@zysmanlawca.com<br><br>*Attorneys for Plaintiffs* | Jordan L. Lurie<br>Legal Ease Inc.<br>206 East 42nd Street, 20th Floor<br>New York, NY 10017 |

# EXHIBIT 3

Lurie, Jordan L
1100 Glendon Ave.
15th Floor
Los Angeles, CA   90024

General Motors LLC

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Mehlman
                        Plaintiff/Petitioner(s)
                VS.

General Motors LLC
                        Defendant/Respondent(s)
            (Abbreviated Title)

No. <u>RG19013705</u>

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:

Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Case Management Conference:
DATE: 06/11/2019    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION:  Administration Building, Fourth Floor
                1221 Oak Street, Oakland

Dated:  05/15/2019

Chad Finke  Executive Officer / Clerk of the Superior Court

By

                                                        Deputy Clerk

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 05/15/2019.

By

                                                        Deputy Clerk

## CERTIFICATE OF SERVICE

**Elaine Goodman hereby certifies that:**

I am employed with the firm of Pomerantz LLP in the County of New York, State of New York, and am over the age of 18 and not a party to the within action; my business address is 600 Third Avenue, New York, New York 10016.

On May 21, 2019, I caused to be served by first class mail a true and correct copy of Plaintiff's Notice of Assignment, Hearing, and initial Case Management Order upon counsel for defendants as follows:

John Nadolenco
Evan Wooten
Kirby Hsu
MAYER BROWN LLP
350 S. Grand Avenue, 25th Floor
Los Angeles, California 90071

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed on **May 21, 2019,** at New York, New York.

Elaine Goodman

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Jennifer Pafiti, State Bar No. 282790
jpafiti@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
Roxanna Talaie, State Bar No. 320553
rtalaie@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**LAW OFFICES OF ZEV B. ZYSMAN**
A Professional Corporation
Zev B. Zysman, State Bar No. 176805
zev@zysmanlawca.com
15760 Ventura Boulevard, 16th Floor
Encino, CA 91436
Telephone: (818) 783-8836

*Attorneys for Plaintiff*

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Gregory L. Mehlman, on behalf of himself and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. RG19013705<br><br>**PLAINTIFF'S STATEMENT IN SUPPORT OF COMPLEX DETERMINATION**<br><br>Date: May 14, 2019<br>Time: 3:00 p.m.<br>Judge: Hon. Brad Seligman<br>Dept: 23<br><br>Date Action Filed: April 4, 2019<br>Trial Date: Not yet set |

Plaintiff Gregory L. Mehlman ("Plaintiff") respectfully submits this Statement in Support of Complex Determination in advance of the Complex Determination Hearing set for May 14, 2019.

California Rule of Court 3.400(b) identifies five factors that bear on whether an action is a complex case. At least two of these factors are present here and strongly support designation of this case as complex. These factors are:

1. Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; and,

2. Management of a large number of witnesses or a substantial amount of documentary evidence.

Designation of this case as complex will promote effective decision making by the court, the parties and counsel. *See* Cal. R. 3.400(a).

This case raises a novel legal issue regarding the applicability of public injunctive relief under California Business and Professions Code sections 17200 *et seq.* (the "UCL") following the California Supreme Court's decision in *McGill v. City Bank, N.A.*, 2 Cal.5th 945 (2017) ("*McGill*"). This case also raises novel issues under California's Computer Data Access and Fraud Act, Cal. Pen. Code section 502 ("CDAFA").

As set forth in *McGill*, the UCL provides for public injunctive relief: "public injunctive relief remains a remedy available to private plaintiffs under the UCL" even when there is an arbitration provision. *McGill* at 961. *McGill* also held that a plaintiff may seek public injunctive relief without complying with the procedural requirements of a class action. *See McGill* at 960 (finding that the class action requirement has never been imposed with regard to requests to enjoin future wrongful business practices that will injure the public). Under *McGill*, any consumer who loses money or property as a result of an unfair business practice may seek public injunctive relief to prohibit unlawful acts that threaten future injury to the public without the need to certify a class.

Plaintiff seeks public injunctive relief with respect to Defendant General Motors LLC's ("Defendant" or "GM") collection and use of vehicle data. Plaintiff has alleged that connected

PLAINTIFF'S STATEMENT IN SUPPORT OF COMPLEX DETERMINATION

1   vehicles have become the next big thing for the automotive industry.  According to a study by

2   McKinsey & Company, by 2020, automakers will be able to make more money selling vehicle

3   data than by selling the cars themselves, and by 2030, the market for in-vehicle connectivity

4   worldwide is expected to reach $750 *billion*.  In their desire to monetize vehicle data, car

5   makers, including Defendant General Motors LLC, have turned on a powerful spigot of precious

6   personal information without compensating consumers.  Consumers deserve, and are legally

7   entitled, to participate in the commercialization of their own car data.  By this action, Plaintiff

8   seeks public injunctive relief to enjoin Defendant's unauthorized access and use of drivers'

9   vehicle data and compel Defendant to establish a framework for compensating drivers for

10  Defendant's use of their car data and/or to compensate current and future GM car owners for the

11  use of their car data (for example, by offering buyers financial incentives for the collection and

12  use of vehicle data, lower monthly lease payments or discounted pricing or rebates, direct free

13  features or services, or by otherwise subsidizing the cost of the car).  Plaintiff further alleges

14  that, in collecting car data, Defendant has also violated its own voluntary "Privacy Principles"

15  that GM and other car companies agreed to in response to privacy concerns raised by Congress.

16  Car data is worth money.  Car manufacturers are not entitled to use it for free and without full

17  and adequate disclosures at the point of sale.  *See* Complaint, ¶¶ 1, 2, 3, 5-7, 63, 66.

18      To the best of Plaintiff's current knowledge, this is the first case to apply the holding in

19  *McGill* to data collection, especially with respect to vehicle data.  This case will likely involve

20  novel and complex issues regarding the applicability of *McGill*, including issues of standing and

21  the scope and availability of injunctive relief.  This case also involves untested and novel issues

22  regarding unauthorized use of digital information under the CDAFA, as Plaintiff alleges that

23  Defendant has accessed car owners' vehicle information without permission in violation of the

24  CDAFA as a predicate violation of the UCL's unlawful prong.  *See* Complaint, ¶¶ 62, 83-84.

25  Under the CDAFA, it is illegal to knowingly access and without permission take or use any data

26  from a computer or computer system.  *See* Cal. Pen. Code section 502(c).  Further, this case will

27  likely also involve analyzing and reviewing large amounts of vehicle data or categories of data,

28  in digital and/or documentary form, that GM obtained from Plaintiff and other owners' vehicles.

PLAINTIFF'S STATEMENT IN SUPPORT OF COMPLEX DETERMINATION

1    Due to the novel and complex issues raised by this action and in the interests of judicial

2    economy, expeditious handling of the case, cost management, and promoting effective decision

3    making by the court, the parties, and counsel, Plaintiff respectfully requests that the case be

4    designated complex.

5

6    Dated: May 10, 2019                                    Respectfully submitted,

7                                                           POMERANTZ LLP
                                                            LAW OFFICES OF ZEV B. ZYSMAN, APC
8

9                                                    By: _____

10                                                          Jordan L. Lurie
                                                            *Attorneys for Plaintiff*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S STATEMENT IN SUPPORT OF COMPLEX DETERMINATION

THE SUPERIOR COURT OF CALIFORNIA

# COUNTY OF ALAMEDA



Select Language ▼    Español   |   Tiếng Việt   |   ਪੰਜਾਬੀ   |   简体中文   |   繁體中文

Log In

**DomainWeb**

*your resource for case filing information*

**Buy Credits**

**0** Credit(s)

**Checkout (0 item(s))**

**DomainWeb**     **How This Site Works**     **FAQ**

## Case Details

**Case Number: RG19013705**      **Title: Mehlman VS General Motors LLC**

| Case Summary | Register of Action | Participants | Tentative Rulings |
| Future Hearings | Minutes |



| Date | Action |
| --- | --- |

| Date | Action |
|------|--------|
| 5/10/2019 | This Tentative Ruling is made by Judge Brad Seligman COMPLEX DETERMINATION<br><br>The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.<br><br>COMPLEX CASE FEES<br><br>Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)<br><br>PROCEDURES<br><br>Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.<br><br>SERVICE OF THIS ORDER<br><br>Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. |